IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT E. JACKSON, | ) |
|     Plaintiff, | ) |
| v. | ) No. 09 C 6010 |
| | ) Judge Joan H. Lefkow |
| N'GENUITY ENTERPRISES, CO; VALERIE LITTLECHIEF; ALFRED BOWEN; and DUSTIN THOMAS BOWEN | ) |
|     Defendants. | ) |

## OPINION AND ORDER

Vincent "Bo" Jackson filed a twelve-count complaint against N'Genuity Enterprises, Valerie Littlechief, Alfred Bowen and Dustin Bowen in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, arising from the alleged mismanagement N'Genuity. The defendants removed the case to the this court pursuant to 28 U.S.C. § 1446,[1] and Alfred and Dustin Bowen now seek dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The only counts in question are those brought against one or both of the Bowens, namely Count V for breach of fiduciary duty against Alfred; Count VI for breach of fiduciary duty against Dustin; Count VII for violation of the Arizona Business Corporation Act against all defendants; Count IX for demand for accounting against all defendants; Count XI for civil conspiracy against Littlechief, Alfred and Dustin; and Count XII for injunctive relief against all defendants. For the following reasons, the motion [21] is denied.

---

[1] This court has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(1), as Jackson is an Illinois citizen and all defendants are Arizona citizens, and the amount in controversy exceeds $75,000.

1

**BACKGROUND**

N'Genuity is an Arizona corporation which sells health foods. Littlechief and Jackson founded the company in 2001. Since incorporation, Littlechief has been corporate president and owner of 51% of N'Genuity's stock. Jackson has served as secretary and owned 49% of the corporation's stock. Beginning in 2004, Dustin Bowen, who is Alfred Bowen's son and Littlechief's stepson, was an N'Genuity employee handling administrative tasks such as filling orders and making bank deposits. On November 25, 2004, Dustin was appointed as a director. Jackson alleges this appointment was a sham. Alfred, Littlechief's husband, was allegedly responsible for business relations and "day-to-day operations," including management of N'Genuity's finances. Jackson alleges that in addition to his role as secretary, he was responsible for marketing N'Genuity's products, a task he managed from an office in his Burr Ridge, Illinois home with a phone line paid for by and registered to N'Genuity.

Jackson is a retired star athlete, famous for his exploits on the gridirons of Auburn University and the National Football League, the diamonds of Major League Baseball, and Nike's legendary "Bo Knows" advertising campaign. He alleges that he entered into an oral contract with N'Genuity for the use of his name and image in the sale of its products, conditioned on his continued consent and affiliation with N'Genuity. The relationship between Jackson and N'Genuity has since soured and as of June 25, 2009, he has withdrawn his consent for the use of his image.

Jackson alleges a series of deceptive and illegal practices in the period leading up to his revocation of consent for the use of his image. After growing suspicious of N'Genuity's business practices, Jackson demanded copies of financial records, making his demands in written form, and in person when he met with Littlechief and Alfred on November 9, 2008 in

Bolingbrook, Illinois. Jackson alleges that most of these demands went unanswered.[2] In addition to his demands for records, Jackson had several exchanges with the defendants regarding corporate meetings,[3] which he alleges were surreptitiously and deceptively scheduled to keep him from attending. These decisions included increasing the number of shares N'Genuity would offer, increasing the number of corporate directors from two (Jackson and Littlechief) to three, and appointing Dustin to the third directorship.

Jackson alleges that Alfred and Dustin misappropriated N'Genuity's corporate funds for their personal use, that they mismanaged corporate assets, and that they worked in concert with Littlechief to achieve these aims, dilute Jackson's interest in the company, and keep Jackson from assessing the well-being of the company. As part of these actions, they also misappropriated funds personally belonging to Jackson for their own personal use, including at least $100,000 that Jackson allegedly advanced to the company. As a result, he claims to have suffered reputational and economic damages.

## LEGAL STANDARD

The plaintiff bears the burden of establishing personal jurisdiction once challenged by the defendant. *See Purdue Research Found.* v. *Sanofli-Synthelabo S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc.* v. *Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Where, as here, the court must rule on such a challenge on the basis of written materials and prior to an evidentiary hearing, the plaintiff must make a *prima facie* case for personal jurisdiction to avoid

---

[2] The defendants did respond to the third written demand for documents by sending what Jackson claims were insufficient documents to his attorney in Hinsdale, Illinois, along with an offer to inspect N'Genuity's corporate records in Washington, D.C.

[3] It is not clear where Jackson received the faxes comprising these exchanges, but since the court must read the pleadings liberally and draw every inference in the plaintiff's favor, *Olson* v. *Jenkens & Gilchrist, P.C.,* 461 F. Supp. 2d 710, 721–22 (N.D. Ill. 2006), the court infers that they were received either by his attorney or by him personally in his home office, and in either case in Illinois.

dismissal.  The court may receive and consult affidavits in making this determination, *see Nelson* v. *Park Indus., Inc.*, 717 F. 2d 1120, 1123 (7th Cir. 1983), while also resolving "all disputes concerning relevant facts in the record" in the plaintiff's favor.  *Purdue*, 338 F.3d at 782 (quoting *Nelson* v. *Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

## ANALYSIS

### I. Relevant Law

In diversity cases, a federal court has personal jurisdiction over a defendant "'only if a court of the state in which [the district court] sits would have such jurisdiction.'"  *Klump* v. *Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (quoting *Wilson* v. *Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990)).  Illinois's long-arm statute allows its courts to exercise personal jurisdiction to the full extent allowed by United States Constitution.  *Id.* (citing 735 Ill. Comp. Stat. 5/2-209(c)).  Under the Due Process Clause, courts may exercise personal jurisdiction if "it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."  *Rollins* v. *Ellwood*, 565 N.E.2d 1302, 1316, 141 Ill.2d 244, 152 Ill. Dec. 384 (1990).

In order to satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Millikin* v. *Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).  The defendant has such minimum contacts where his "conduct and connection with the forum State are such that he should reasonably anticipate being haled into

4

court there." *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Personal jurisdiction comes in two forms: general and specific. Where the events that are the basis of the lawsuit do not arise out of and are not related to any activities within the forum state, the minimum contacts requirement is satisfied if the court has general jurisdiction—that is to say, jurisdiction stemming from the defendant's "continuous and systematic" contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 415-416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). The second form of personal jurisdiction is specific jurisdiction, which is appropriate where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In either case, "each defendant's contacts with the forum state must be assessed individually." *Calder* v. *Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Accordingly, courts may not acquire personal jurisdiction over employees through the actions of their employers.

## II.     Whether the Court May Exercise Personal Jurisdiction over the Bowens

### A.     General Jurisdiction

Jackson argues that the court has general jurisdiction over the Bowens. He relies on the Illinois long arm statute that gives its courts general jurisdiction over any "natural person or corporation doing business within this State." 735 Ill. Comp. Stat. 5/2-209(b)(4). "Doing business in the state," however, is not a sufficient condition for personal jurisdiction.

> To be considered doing business for purposes of general jurisdiction, the nonresident defendant must carry out business within the state on a basis that is not occasional or casual, but rather with permanence and continuity. . . . The

> doing business standard is rather high, because general jurisdiction establishes
> that the corporation has effectively taken up residence in Illinois and, therefore,
> may be sued on causes of action both related and unrelated to its activities in
> Illinois.

*Sabados* v. *Planned Parenthood*, 882 N.E.2d. 121, 128, 378 Ill. App. 3d 243, 317 Ill. Dec. 547 (2007) (citations omitted) (internal quotation marks omitted).

With regard to Dustin, Jackson alleges only that Dustin worked for N'Genuity, and in doing so conducted some business in Illinois. This allegation is insufficient to show continuous and systematic contacts—the kind carried out with "permanence and continuity," *id.*, that make general jurisdiction appropriate. With regard to Alfred, Jackson alleges that Alfred's communication with Jackson through company-owned phone lines located in Illinois, occasional trips into Illinois, and one meeting at which the disputes between the parties were discussed, are sufficient to establish personal jurisdiction. But again, the pleadings and the response fall well short of indicating continuous and systematic contacts, or reflecting permanence and continuity. As Jackson fails to meet the burden of showing a *prima facie* case for general jurisdiction, this court's ability to hear his suit hinges on specific jurisdiction.

    **B.**    **Specific Jurisdiction**

        **1.**    **The Effects Doctrine**

Jackson argues that this court may assert personal jurisdiction over the Bowens via the "effects doctrine."[4] The effects doctrine allows a litigant to assert personal jurisdiction over another if the forum was the "focal point" of the allegedly tortious action. *Calder*, 465 U.S. at 789 (finding that a plaintiff could assert personal jurisdiction in California over Floridian authors

---

[4] Jackson does not use this language, but he does cite the relevant language from *Calder*, 465 U.S. at 783, that describes what is known as the effects doctrine.

of a Florida publication allegedly libeling her, because "the focal point both of the story and the harms suffered" was California, and this is where "the brunt of the harm" was experienced).

In order to avail himself of the effects doctrine, Jackson must make a *prima facie* case for "(1) intentional conduct (or "intentional and allegedly tortious" conduct);[5] (2) expressly aimed at [Illinois]; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state. *Tamburo* v. *Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). In *Tamburo*, the Seventh Circuit noted a circuit split regarding whether the "expressly aimed" conduct includes "all jurisdictionally relevant intentional acts of the defendant or only those acts that are intentional and alleged to be tortious or otherwise wrongful." *Id*. at 704. Here, as in *Tamburo*, it is not necessary to address this split, because the alleged acts underlying the civil conspiracy, *e.g.*, the Bowens' alleged misappropriation of corporate assets, are themselves tortious and wrongful.

The inquiry thus moves to the second and third elements, whether the Bowens aimed their conduct at Illinois, knowing that Jackson would be injured there.[6] Because these elements

---

[5] This distinction is not important here, as the alleged civil conspiracy is both intentional and tortious, which satisfies the narrower of the two possible readings. Furthermore, civil conspiracy is a tort, albeit a derivative one, in both Illinois and Arizona. *See McClure* v. *Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258, 188 Ill.2d 102, 241 Ill. Dec. 787 (1999) ("Civil conspiracy is an intentional tort and requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'" (quoting *Adcock* v. *Brakegate, Ltd.*, 645 N.E.2d 888, 894, 164 Ill.2d 54, 206 Ill. Dec. 636 (1994))); *AGA S'holders, LLC* v. *CSK Auto, Inc.*, 589 F.Supp. 2d 1175, 1191 (D. Ariz. 2008) ("In Arizona, both civil conspiracy and aiding and abetting are derivative torts for which a plaintiff may recover only if it has adequately pled an independent primary tort . . ." (citations omitted)). Accordingly, the court need not undertake a choice of law analysis. *See Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 898, 227 Ill. 2d 147, 316 Ill. Dec. 505 (2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome.") (citations omitted).

[6] To determine where the tort occurred, the court looks to where the plaintiff was injured: "A wrong does not become a 'tort' until an injury has occurred (speeding is wrongful, but not tortious, if no one is injured), and the location of the injury therefore is vital to understanding where the tort occurred." *Janmark, Inc*. v. *Reidy*, 132 F.3d 1200, 1202-03 (7th Cir. 1997). Accordingly, in *Janmark*, the Seventh Circuit ruled that the tort alleged by the plaintiff, interference with prospective economic advantage,

7

overlap, they will be considered together. *Tamburo,* 601 F.3d at 704. *Tamburo* is also instructive here. There, several defendants were alleged to have defamed, harassed and threatened the plaintiff, and specifically the dog-pedigree database that he owned and operated. These actions were carried out over the Internet, but the defendants "engaged in this conduct with the knowledge that Tamburo lived in Illinois and operated his business there" and, thus, they "specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there." *Id*. at 706. The court held that this was sufficient to satisfy the effects doctrine because "[t]ortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy *Calder*'s express-aiming requirement." *Id*. at 707-708. Jackson is alleged to have been one of two shareholders, and to have advanced money to N'Genuity. As Jackson is a high-profile figure and a director and owner of 49% of N'Genuity's shares, it is more than plausible that the Bowens knew of Jackson, his whereabouts, and how he might be harmed by their actions. Thus, as in *Tamburo*, the defendants were aware that Jackson lived, worked, and would suffer the brunt of the injury from their alleged tortious actions in Illinois. By allegedly conspiring to misappropriate funds and concealing or making it difficult for Jackson to view corporate records, the defendants specifically targeted Illinois, and allegedly caused injuries to Jackson there, including economic damages, damage to his reputation, good will and his personal and business opportunities. Thus, the effects doctrine warrants the Bowens being haled into this forum.

---

occurred in Illinois because it was there plaintiff was injured by defendant's false claims of copyright infringement on the Internet when a New Jersey customer cancelled his order with plaintiff.

### 2. Whether Jackson's Injuries Arise out of the Bowens' contacts with Illinois

The court may not exercise specific jurisdiction over defendants unless the plaintiff's alleged injuries "'arise out of'" or 'relate to' the conduct that comprises the defendants' contacts with the forum." *Tamburo*, 601 F.3d at 708 (citing *Burger King*, 471 U.S. at 472). The most rigorous formulation of this requirement is that "at least with respect to intentional tort claims, the defendant's contacts with the forum must constitute both the cause in fact and the proximate cause of the injury." *Id.* (citing *Mass. Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n,* 142 F.3d 26, 35 (1st Cir. 1998)). Here, none of Jackson's losses would exist without the defendants' actions, which comprise their relevant contacts with Illinois. Moreover, the alleged losses occurred as a direct result of these actions, and so proximate cause is also established. Thus, the injuries in question arise out of or relate to the defendant's contacts with the state of Illinois.

### 3. Fair play and substantial justice

The exercise of personal jurisdiction is never appropriate where it would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Several factors are relevant to this determination, including the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292. Furthermore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Here, it would not violate the traditional notions of fair play and substantive justice to assert personal jurisdiction over Alfred and Dustin in Illinois. Although Illinois is a less convenient forum for the defendants than Arizona, Illinois has a strong interest in making sure that its residents, when intentionally harmed by foreigners, can seek redress in Illinois courts. Additionally, from Jackson's perspective, it is far more convenient and effective to seek relief here than in Arizona. The remaining factors are neutral. Considering these factors, and that the Bowens purposefully directed their conduct at Illinois, the court may appropriately exercise personal jurisdiction over them.

### C. The Fiduciary Shield Doctrine

The Bowens argue that the "fiduciary shield doctrine," essentially a defense to the exercise of personal jurisdiction, applies here. "[T]he fiduciary shield doctrine prevents courts from asserting jurisdiction over a person on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Rollins* v. *Ellwood*, 565 N.E.2d 1302, 1306, 141 Ill. 2d 244, 152 Ill. Dec. 384 (1990). The doctrine is not an absolute right, but rather an equitable and discretionary doctrine. *C.S.B. Commodities, Inc.* v. *Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009) (citation omitted). Moreover, the shield is unavailable where the defendants act "to serve [their] own personal interests." *Interlease Aviation Investors II (ALOHA) L.L.C.* v. *Iowa Corp.*, 262 F. Supp. 2d 898, 912 (N.D. Ill. 2003) (citing *Rice* v. *Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) ("The shield is withdrawn if the agent was acting also or instead on his own behalf.") ). In this case, Jackson alleges that Alfred and Dustin conspired to misappropriate corporate assets for their personal use. Accepting this allegation as

10

true for the purposes of this motion, this defense is unavailable to the Bowens because they are alleged to have acted for their own personal gain.[7]

## III. Pendent Personal Jurisdiction over the Non-Tortious Claims

"Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists." *Rice* v. *Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991) (applying pendent personal jurisdiction in a case involving only state claims); *see also Robinson Eng'g Co. Pension Plan & Trust* v. *George,* 223 F.3d 445, 449 (7th Cir. 2000) ("In our view, the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction supports the application of supplemental personal jurisdiction over claims that are properly before the court under 28 U.S.C. § 1367; *Zurich Capital Mkts., Inc.* v. *Coglianese*, 388 F. Supp. 2d 847, 860 (N.D. Ill. 2004) (applying pendent personal jurisdiction to state claims after acquiring personal jurisdiction over federal claims). Each of Jackson's claims arises from the same common nucleus of facts as the civil conspiracy. The counts are substantively related, and so the Bowens lose nothing "from the standpoint of fundamental fairness," *id*., by having the other counts resolved in the same trial. Thus, the court has pendent personal jurisdiction over Jackson's remaining claims.[8]

---

[7] In their briefing, the Bowens rely on *Plastic Film Corp. of Am., Inc.*, v. *Unipac, Inc.*, 128 F.Supp.2d 1143 (N.D. Ill. 2001), but it is distinguishable. The fiduciary shield doctrine applied in *Plastic Film* because the defendant was a high-ranking officer of the company who was alleged only to have a "personal stake in the financial success of the corporation." *Id.* at 1146-47. Here, Jackson alleges that the defendants misappropriated assets for their own personal gain, not merely that they stood to gain by the corporation's gain.

[8] As injunctive relief and a demand for accounting are remedies, and not causes of action, the court need only address the remaining claims alleged against the Bowens, Counts V and VI for breach of fiduciary duty and Count VII for violations of the Arizona Business Corporation Act, specifically § 10-1602, which

## **CONCLUSION AND ORDER**

For the foregoing reasons, the defendants' Rule 12(b)(2) motion to dismiss [21] is denied.

Dated: August 2, 2010    Enter: _____
    JOAN HUMPHREY LEFKOW
    United States District Judge

---

gives shareholders the right to inspect the corporation's records. To the extent the Bowens argue in their reply brief, Docket No. 45, that Count VII must be dismissed because the Arizona act confers exclusive jurisdiction and venue on Arizona courts, this argument need not be addressed because it is waived. *Carter* v. *Tennant Co*., 383 F.3d 673, 678 (7th Cir. 2004) (arguments first raised in reply are waived).