IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT E. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 CV 6010 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| N'GENUITY ENTERPRISES, CO; ) | |
| VALERIE LITTLECHIEF; ALFRED ) | |
| BOWEN; and DUSTIN THOMAS BOWEN ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Vincent "Bo" Jackson filed a twelve-count complaint against N'Genuity Enterprises, Co. ("N'Genuity" or the "company") and certain directors and employees of N'Genuity, arising from alleged mismanagement of the company.[1] N'Genuity has filed counterclaims against Jackson, who was a director and officer of N'Genuity until November 2009, alleging violations of the general standards of conduct for directors and officers set forth by Arizona statute (Counts I and II) and common law breach of fiduciary duty (Count III). Jackson seeks dismissal of N'Genuity's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Jackson's motion [76] is granted in part and denied in part.

### BACKGROUND

The following facts are taken from N'Genuity's amended counterclaim and are presumed true for the purpose of resolving the pending motion.

---

[1] The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Jackson is an Illinois citizen, the defendants are Arizona citizens, and the amount in controversy exceeds $75,000.

1

N'Genuity is an Arizona corporation that sells wholesale food products and was incorporated in 2001 by Jackson and Valerie LittleChief. At that time, Jackson was given 49% of the company's shares in exchange for allowing N'Genuity to use his name, signature, likeness, and reputation as a star athlete to promote its products. Jackson also allowed N'Genuity to use his name and signature for trademark "Bo Burgers" and "Bo Jackson Signature Foods." In addition, Jackson was a director of N'Genuity and served as the company's secretary. Jackson's responsibilities as an officer and director of N'Genuity included attending conferences, trade shows, and other meetings to promote N'Genuity's food products.

Sometime in 2006 or 2007, N'Genuity learned that Jackson was having an extramarital affair with the wife of a senior executive for Sysco Foodservices ("Sysco"), one of N'Genuity's largest customers and a purchaser of "Bo Jackson Signature Foods" and "Bo Burgers." N'Genuity learned about the affair because Jackson made statements regarding the affair to numerous people. As a result, N'Genuity's relationship with Sysco was damaged and N'Genuity lost nearly all of its business with Sysco.

Sometime in 2008, Jackson allowed Chick-fil-A, a chain of fast food restaurants that primarily serves chicken, to use his name and likeness in a commercial. Jackson did not seek N'Genuity's approval prior to allowing his name and likeness to appear on the commercial. The Chick-fil-A commercial features a cow that wears a paper mask that is a photograph of Jackson's face.[2] The cow is standing on the side of a football field, mooing. Subtitles on the screen "translate" the cow's mooing into English. The subtitles state, in part: "Hi. Multisport Legend

---

[2] The court has viewed the commercial, which is posted on the following website: http://www.bestads.tv/view/2269/chikfila-bo-jackson/. This is not the site that was referenced in the parties' briefs. The website that the court was directed to by both parties is an "adult content" site that requires the viewer to view numerous pornographic photos alongside the Chick-fil-A commercial.

Bo Jackson here. When I wasn't hitting linebackers or baseballs I would run over and eat chicken. Never took up burgers. You will never be a multisport legend unless you hit the chicken." The commercial was consistent with Chick-fil-A's other advertisements, which promote the alleged benefit of eating chicken instead of beef. After the Chick-fil-A commercial was released, N'Genuity's sales of "Bo Burgers" and "Bo Jackson Signature Foods" decreased from $1 million to $100,000. The decrease in sales was caused by the diminution of Jackson's effectiveness as a promoter of N'Genuity's products.

In September, November, and December of 2008, N'Genuity attempted to contact Jackson numerous times, either directly or through his attorney, because N'Genuity's other directors and officers were concerned about the Sysco account and Chick-fil-A commercial.[3] Jackson did not respond to N'Genuity's requests to discuss these issues. N'Genuity scheduled a shareholders and directors meeting for December 2, 2008, which Jackson declined to attend at the last minute. N'Genuity's attorney emailed Jackson's attorney on January 9, 2009 and stated the company intention "to reach some understanding before N'Genuity pursues unilateral action to resolve the matter." Jackson did not respond. On January 27, 2009, N'Genuity held a Special Meeting of the Board of Directors to discuss the Chick-fil-A commercials and necessary follow-up. Jackson received notice of the meeting but did not attend the meeting. Jackson was removed as a shareholder and director of N'Genuity in November 2009.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital*

---

[3] Specifically, N'Genuity tried to discuss these issues or communicate with Jackson on or around October 26, 2008 (when Jackson was at meetings in Arizona), on November 23 and 24, 2008, on December 1 and 9, 2008, and over the period of December 13–15, 2008.

*Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

### I. Pleading Standard

Jackson argues that N'Genuity's claim for breach of fiduciary duty must be pleaded with particularity under Federal Rule of Civil Procedure 9(b) because breach of fiduciary duty creates a presumption of constructive fraud under Illinois and Arizona law. The cases cited by Jackson provide no support for this assertion, however. *See Taylor* v. *Feinberg*, No. 08-CV-5588, 2009 WL 3156747 (N.D. Ill. Sept. 28, 2009); *Hassenpflug* v. *Jones*, 323 P.2d 296 (Ariz. 1958); *In re Guardianship of Chandos*, 504 P.2d 524 (Ariz. Ct. App. 1972).

While it is true that "Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on the underlying facts alleged in the complaint," *Sequel Capital, LLC* v. *Pearson*, No. 07-CV-2642, 2010 WL 4008161, at *7 (N.D. Ill. Oct. 13, 2010), courts have held that claims of fiduciary duty are subject to the pleading requirements of Rule 9(b) only where the facts underlying the breach involve fraudulent conduct. *See, e.g.*, *Robison* v. *Caster*, 356 F.2d 924, 925 (7th Cir. 1966) ("Rule 9(b) applies to claims for breach of fiduciary duty which are based on

4

schemes to defraud."); *Sequel Capital*, 2010 WL 4008161, at *7 (breach of fiduciary duty claim alleged that defendants engaged in an "elaborate shell-game" and a sham auction sale); *Taylor*, 2009 WL 3156747, at *5 (basis for fiduciary duty claim was the defendant's alleged misappropriation of funds and attempted cover-up of the scheme). Moreover, some courts have declined to apply Rule 9(b) even where allegations of fraud and deceit have been made. *See Nat'l Council on Comp. Ins., Inc.* v. *Am. Int'l Group, Inc.*, No. 07 C 2898, 2009 WL 466802, at *17 (N.D. Ill. Feb. 23, 2009) (declining to apply Rule 9(b) where breach of fiduciary duty involved allegations of conspiracy, the dissemination of false account statements, and concealment of fraudulent conduct); *Cement-Lock* v. *Gas Tech. Inst.*, No. 05 C 0018, 2005 WL 2420374, at *17 (N.D. Ill. Sept. 30, 2005) (declining to apply Rule 9(b) where breach of fiduciary duty was based on alleged self-dealing, non-arm's-length deals, and misappropriation of property).

N'Genuity has not alleged acts of fraud or deceit in its counterclaims against Jackson. N'Genuity's counterclaims are premised on the notion that Jackson undertook certain activities that were harmful to N'Genuity's business interests precisely because he acted within public view, thereby destroying customer confidence in N'Genuity's products. The court will apply the minimum pleading requirements of Federal Rule of Civil Procedure 8(a) to N'Genuity's counterclaims.

**II. The Sufficiency of N'Genuity's Pleading**

Jackson argues that N'Genuity's counterclaims do not allege facts sufficient to establish that he breached his statutory or common law duties to N'Genuity or that damages resulted from his alleged breach. By statute, the directors and officers of an Arizona corporation are required to discharge their duties to the corporation in good faith, with the care of an ordinarily prudent

5

person, and in a manner that an officer or director reasonably believes to be in the best interests of the corporation. Ariz. Rev. Stat. Ann. §§ 10-830, -842.[4] Arizona courts also recognize a director's duty of loyalty, which "is in the nature of a trust relationship requiring a high degree of care on the part of the director." *Resolution Trust Corp.* v. *Dean*, 854 F. Supp. 626, 643 (D. Ariz. 1994) (quoting *Master Records, Inc.* v. *Backman*, 652 P.2d 1017, 1020 (Ariz. 1982)); *see also Tovrea Land & Cattle Co.* v. *Linsenmeyer*, 412 P.2d 47, 57 (Ariz. 1966) (prohibition on engaging in a competitive enterprise); *Shoen* v. *Shoen*, 804 P.2d 787, 794 (Ariz. Ct. App. 1990) (prohibition on self-dealing). An officer's or director's duties to a corporation are analyzed under the business judgment rule, which "precludes judicial inquiry into actions taken by a director in good faith and in the exercise of honest judgment in the legitimate and lawful furtherance of a corporate purpose." *Best Western Int'l, Inc.* v. *Furber*, No. CV-06-1537-PHX-DGC, 2008 WL 2045701, at *4 (D. Ariz. May 12, 2008) (quoting *Albers* v. *Edelson Tech. Partners L.P.*, 31 P.3d 821, 828 (Ariz. Ct. App. 2001)); *see also* Ariz. Rev. Stat. Ann. §§ 10-830(D), -840(D). If there is a prima facie showing that an officer or director has a personal interest in a transaction, "the business judgment rule does not apply, and the burden shifts to the director to show that the decision with respect to a particular transaction is fair and serves the best interests of the corporation." *Shoen*, 804 P.2d at 794.

---

[4] The court applies Illinois choice of law principles to determine whether the substantive law of Illinois or Arizona governs this proceeding. *See Tanner* v. *Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Illinois choice of law principles provide that the law of N'Genuity's state of incorporation, Arizona, should be applied to its claim for breach of fiduciary duty. *See Abbott Labs.* v. *Takeda Pharm. Co. Ltd.*, 476 F.3d 421, 425 (7th Cir. 2007); *Libco Corp.* v. *Roland*, 426 N.E.2d 309, 312, 99 Ill. App. 3d 1140, 55 Ill. Dec. 334 (1981) (the law of the state of incorporation controls the internal matters of a corporation).

**A. The Sysco Claim**

The facts alleged by N'Genuity regarding his alleged extramarital affair are not sufficient to state a claim for breach of fiduciary duty. As the Arizona statute and related cases make clear, an alleged breach of an officer's or director's fiduciary duty must relate to a "specific duty owing to the corporation." *Dean*, 854 F. Supp. at 643-44 (quoting *Master Records, Inc.*, 652 P.2d at 1020); *see also* Ariz. Rev. Stat. Ann. §§ 10-830, -842 (discussing the standards of conduct that an officer or director must adhere to in discharging his duties to the corporation). Based on the facts alleged here, however, Jackson's alleged extramarital affair was not related to the discharge of the specific corporate duties that he owed to the company. Jackson's duties to N'Genuity were to promote N'Genuity's products through the use of his name and signature, attend trade shows and conferences, and act as N'Genuity's secretary. N'Genuity has not alleged that the affair was carried out or initiated under the auspices of Jackson's corporate duties; nor has N'Genuity alleged that Jackson had any specific duties relating to Sysco. N'Genuity has not cited any cases to support its conclusion that director liability can be premised upon a director's personal relationship that is distinct from activities that were required as part of his obligations to the corporation.

N'Genuity's counterclaim also fails to allege facts sufficient to create a reasonable inference that N'Genuity lost business with Sysco because of Jackson's affair. *See Iqbal*, 129 S. Ct. at 1949. Significantly, the counterclaim does not indicate when, or how, any executives at Sysco learned of Jackson's personal relationship with the Sysco executive's wife. Instead, the counterclaim states vaguely that the company "received information" that Jackson "was conducting, or had conducted" an extramarital affair with the executive's wife and that, as a result of Jackson's affair, the company "has suffered, is suffering, and will continue to suffer"

damage to its business with Sysco. N'Genuity's allegation that Jackson discussed the affair with "numerous individuals" does not reasonably lead to the conclusion that Sysco executives learned about the affair or – more importantly – that they withdrew business from N'Genuity because of the affair. The bare assertion that Jackson's personal relationship with an unnamed executive's wife caused the company to lose "most, if not all" of its business with Sysco is not sufficient to permit the inferences needed to establish a breach of fiduciary duty. N'Genuity's counterclaims relating to Jackson's alleged affair with the wife of a Sysco executive will be dismissed.

### B. The Chick-fil-A Claim

N'Genuity's allegations regarding the Chick-fil-A commercial are sufficient to state a claim. N'Genuity alleges that Jackson had a specific duty to promote its wholesale food products, in particular by allowing his name and likeness to appear on the "Bo Jackson Signature Foods" products. N'Genuity plausibly asserts that Jackson's appearance in commercials for Chick-fil-A undermined the effectiveness of his promotion of N'Genuity's products, which were marketed as Jackson's "signature" line of foods. Jackson's public statement that he "never took up burgers" and his recommendation that aspiring athletes "hit the chicken," made in support of Chick-fil-A's food products, were contrary to N'Genuity's interest in marketing "Bo Burgers" and other unique "Bo" Jackson foods. In particular, customers who saw the Chick-fil-A commercial might have questioned Jackson's commitment to the company and its "signature" brand of "Bo" Jackson foods. N'Genuity further alleges that there was a link between Jackson's appearance in the Chick-fil-A commercial in 2008 and the drop in sales of "Bo Jackson Signature Foods" during the following year. Unlike N'Genuity's Sysco claim, the specificity of the allegation and the timing of the drop in sales supports the inference that the drop in sales was caused by the Chick-fil-A commercial. Taken together, these allegations put Jackson on notice

8

for a viable claim for breach of the duties of good faith and loyalty that he owed to the company. *See* 1 *William E. Knepper and Dan A. Bailey*, *Liability of Corporate Officers and Dirs.* § 4.01 (8th Ed. 2009) ("A director's duty of loyalty requires scrupulous observation of a duty (1) to protect the interests of the corporation and (2) to refrain from doing anything to injure it."); *Atkinson* v. *Marquart*, 541 P.2d 556, 558 (Ariz. 1975) (director failed to act in good faith when his actions caused deliberate injury to business and reputation of the corporation).

Jackson asserts that N'Genuity's counterclaim should be dismissed because Chick-fil-A does not compete with N'Genuity and because N'Genuity fails to allege that he had a corporate duty *not* to appear in the Chick-fil-A commercial or make public statements regarding the benefits of chicken. In *Atkinson*, however, the Arizona Supreme Court made clear that a director may be found liable for failing to discharge his existing corporate duties "in good faith," irrespective of whether he was explicitly forbidden to engage in a given course of action. *See* 541 P.2d at 558 (holding that issues relating to a "no competition" provision in a partnership agreement were moot because the defendant had clearly violated his fiduciary duty to the corporation by engaging in a competing enterprise). The Arizona court's analysis of an alleged breach of fiduciary duty therefore focused on specific actions that were taken by the defendant director/stockholder in relation to his corporation:

> The findings strongly support the conclusion that the defendant did not conduct his relations with the corporation and its other stockholder in good faith. It is not the fact of engaging in a competing business that gives rise to liability. It is the additional circumstances which show a course of conduct of causing deliberate injury to the business and reputation of the corporation that supports a finding of bad faith and resulting liability.

*Id.* at 558. Here, N'Genuity has alleged that Jackson agreed to promote "Bo" Jackson food products and then failed to communicate his intent to allow his likeness to appear in the Chick-

9

fil-A commercial for another type of food. N'Genuity's sales were harmed by the commercial, and Jackson was unwilling to take steps to ameliorate the damage that the commercial caused. These allegations support the inference that Jackson failed to act in good faith and that he acted against the company's interest by promoting Chick-fil-A instead of N'Genuity's products. The court need not dismiss for N'Genuity's failure to allege that Jackson had a specific duty not to promote other food products or that he engaged in a competing enterprise. Jackson's motion to dismiss N'Genuity's claims relating to the Chick-fil-A commercial will be denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Jackson's Rule 12(b)(2) motion to dismiss [76] is granted in part and denied in part. N'Genuity's claims relating to Jackson's alleged extramarital affair are dismissed with prejudice. Jackson has fourteen days to answer the remaining counterclaims.

Dated: November 8, 2010                    Enter: _____
                                           JOAN HUMPHREY LEFKOW
                                           United States District Judge