**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VINCENT E. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 6010 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| N'GENUITY ENTERPRISES CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Vincent E. ("Bo") Jackson, achieved substantial fame as a professional football and baseball player for the Los Angeles Raiders and the Kansas City Royals, Chicago White Sox and California Angels. Unfortunately, as an investor in N'Genuity Enterprises, he was not as successful. Mr. Jackson blames the defendants, whom he accuses of looting the company of perhaps millions of dollars. The defendants have denied any wrongdoing and have their own grievances against Mr. Jackson. As so often occurs in civil litigation, the course of discovery has not been smooth and has once again proven the wisdom of Judge Posner's insight that discovery is the bane of modern litigation. *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000).[1]

Of course, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). *Accord Oppenheimer Fund, Inc. v. Sanders,* 437 U.S.

---

[1] In an address to the Bar Association of the City of New York in 1921, Learned Hand, then a young district judge, lamented the "atmosphere of contention over trifles, the unwillingness to concede what ought to be conceded, and to proceed to the things which matter. Courts have fallen out of repute; many of you avoid them whenever you can, and rightly. About trials hang a suspicion of trickery and a sense of a result depending upon cajolery or worse. I wish I could say that it was all unmerited. After now some dozen years of experience I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death." Lectures on Legal Topics, Learned Hand, The Deficiencies Of Trials to Reach the Heart of the Matter, 105 (The MacMillan Co. 1926). And this was long before modern discovery rules came on the scene.

340, 351 (1978). The discovery rules are not a ticket, Judge Moran has wisely observed, to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D.Ill.1994). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Id.*

The core requirement of any request for information in discovery is that the information be relevant. Rule 26(b)(1), Federal Rules of Civil Procedure, provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Information need not be admissible at trial; it is sufficient if the discovery request "appears reasonably calculated to lead to the discovery of admissible evidence."*Id. See Redwood v. Dobson,* 476 F.3d 462, 469 (7th Cir.2007). As expansive and inclusive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *United States v. Murzyn,* 631 F.2d 525, 529 (7th Cir.1980); *United States v. Marks,* 816 F.2d 1207, 1211 (7th Cir.1987), the standard under the discovery provisions of the Federal Rules of Civil Procedure is even broader. *Hofer v. Mack Trucks,* 981 F.2d 377 (8th Cir.1992); *Johnson v. Jung* 2007 WL 1373181, *2 (N.D.Ill.2007).

The Supreme Court has cautioned that the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153, 177 (1979). Failure to exercise that control results in enormous costs to the litigants and to the due administration of justice. *Cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989).

Some time ago, I held a several hour discovery conference in chambers.  At the time, I declined to give the plaintiff permission to obtain the bank account records of the individual defendants and their tax returns.  The evolution of this case has persuaded me that at least in terms of the tax returns, that decision needs to be revised.  It would needlessly prolong this opinion to try to review the plaintiff's unsuccessful attempts to gather information relating to their contention that the individual defendants have looted the company in which Mr. Jackson is a minority shareholder.  One of Mr. Jackson's chief complaints is that he has been told in response to discovery requests that there are essentially no accounting records between 2001 and 2008, even though the company had very substantial revenues.  It has been claimed that computer records were destroyed when the corporate defendant changed its accounting system to Quickbooks.  And, it has further been represented that the company did not maintain or does not have a general ledger.  Today it was disclosed that in a recent deposition, a Rule 30(b)(6) witness appearing on behalf of the corporate defendant claimed that some number of computers were thrown away, although he could not say when or how many or even why.

Whether all this is true or not and what significance the evidence will have for the appropriate fact-finder are issues for another time and place.  It is not for me to make ultimate judgments, and I am not in possession of sufficient information to do so now even were that task mine.  What is clear, however, is that the tax returns of the individual defendants who have been charged with siphoning off enormous amounts of money in clandestine and labyrinthine ways are relevant to determining whether or not they have been the recipients of money spirited from the corporation – as Mr. Jackson's suit contends.

At the hearing today, counsel for the defendants objected to a turnover of the personal returns. That objection is not persuasive. It has long been beyond debate that income tax returns are not privileged or otherwise immune from discovery. *See St. Regis Paper Co. v. United States,* 368 U.S. 208, 218-19 (1961); *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74-75 (7th Cir.1992); *Commodity Futures Trading Com'n v. Collins,* 997 F.2d 1230, 1233 (7th Cir.1993); *Camphausen v. Schweitzer,* 2010 WL 4539452, 3 (N.D.Ill.2010)(St. Eve. J.); *U.S. v. Six Hundred Forty-Four Thousand Eight Hundred Sixty and 00/100 Dollars in U.S. Currency,* 2007 WL 1164361, 2 (C.D.Ill.2007); *Raiser v. O'Shaughnessy*, 1992 WL 309541, 1 (N.D.Ill.1992)(Moran, C.J.). This is not to say that tax returns are discoverable for the asking. They are not. *See, e.g., Diak v. Dwyer, Costello & Knox, P.C.,* 33 F.3d 809, 813 (7th Cir.1994). Like all other evidence sought in discovery, the returns must be relevant.

Some courts have suggested that there is a heightened showing that must be made before tax returns are discoverable. In their view, it is not enough that the returns are relevant; there must be a compelling need for the information and/or it must not be available from another source. *See, e.g., Trilegiant Corp. v. Sitel Corp.*, 2010 WL 4668950, 7 (S.D.N.Y.2010); *Thornton v. UL Enterprises*, LLC 2010 WL 4721235, 3 (W.D.Pa.2010). Nothing in Rule 26 or in the regulations or statutes governing income tax returns compels this additional overlay, and the Seventh Circuit has not adopted such a position. Indeed, the court said in *Poulos*: "We express no opinion at this time on the validity or proper formulation of this policy against disclosure." And, it emphasized that "if we were to recognize some sort of presumption against disclosure, we would certainly leave

4

enforcement of the policy to the discretion of the trial court...." 959 F.2d at 75.[2]

Even if one had to make a showing beyond relevance in order to obtain discovery of income tax returns – a proposition to which I do not subscribe – that showing certainly has been made here given the course of discovery and the absence of records that one would have expected to have been available and which would have either supported or refuted, at least in part, the parties' clashing positions on the movement of monies out of the defendant corporation. And as a matter of the discretion the Seventh Circuit has said district courts possess in these matters, I think it appropriate that the tax returns Mr. Jackson has sought be provided.[3] Perhaps they will undercut the plaintiff's theory. Perhaps not. But in the context of this case, the plaintiff ought to have an opportunity to review them.

The Supreme Court has recently stressed that relevance under Rule 401 is determined in the context of the facts in a particular case, and thus is generally not amenable to a broad *per se* rule. *Sprint/United Management Co. v. Mendelsohn,* 552 U.S. 379, 387-388 (2008). The same is true of relevance under Rule 26(b)(1). The unique facts of this case more than amply support the conclusion that the tax returns sought by Mr. Jackson are singularly relevant. Accordingly, the individual defendants shall produce copies of their individual income tax returns, state and federal, for the

---

[2] *Accord Six Hundred Forty-Four Thousand Eight Hundred Sixty and 00/100 Dollars in U.S. Currency,* 2007 WL 1164361 at *2."Contrary to the claimants' assertion, the Seventh Circuit in *Poulos* ... did not 'opine' that public policy favors the non-disclosure of tax returns. Indeed, the Seventh Circuit expressed no opinion on the issue and rather held that '[t]ax returns in the hands of a taxpayer are not privileged.' *Id.* at 74. The claimants' remaining citations in this part of their brief merely is a copy of the string citation employed by the Seventh Circuit in stating the opinion (which it did not adopt)."

[3] Discretion denotes the absence of a hard and fast rule. *Langnes v. Green,* 282 U.S. 531, 541 (1931); *Rogers v. Loether,* 467 F.2d 1110, 1111-12 (7th Cir.1972)(Stevens, J.). Thus, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *United States. v. Banks,* 546 F.3d 507, 508 (7th Cir. 2008).

reporting years 2001-2009 on a rolling basis consistent with the timetable and other conditions set forth in the accompanying minute order.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/29/10