# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | Jeffrey Cole |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6010 | **DATE** | 3/28/2011 |
| **CASE TITLE** | Vincent E. Jackson vs. N'Genuity, et al | | |

**DOCKET ENTRY TEXT**

Motion hearing held. Plaintiff's Motion to Compel [203] is granted as discussed on the record. The motion for fees is also granted pursuant to the Seventh Circuit's decision in Rickles v. City of South Bend, Indiana, 33F.3d 785.786 (7th Cir. 1994), as the parties were previously warned (although no prior warning was necessary). Plaintiff may file his fee petition after consultation with counsel for the defendants, as required by our Local Rules, if the parties cannot agree on an amount. Status hearing held and continued to 3/29/2011 immediately following the hearing before Judge Lefkow. Pursuant to the parties' agreement and the discussion on the record today, plaintiff's Motion to Lift Defendants' "Confidential" Designations on All Documents [182] is moot. Plaintiff shall file Exhibits 1-16 and 18-41 to the motion for the appointment of a receiver in an unredacted form with the brief. Portions of Exhibit 17 that the parties agree qualify for confidential treatment may be filed under seal with a simultaneous filing of a parallel redacted version in the public record. Defendants' oral motion for leave to file their responsive brief in excess of 15 pages is granted to and including 35 pages. For specific details, please click the document link for the order in its entirety.

■[ For further details see text below.]   Notices mailed by Judicial staff.

02:05

## Written Opinion

In light of what transpired today on the motion to compel, certain observations are appropriate. No litigant has the right to disregard its opponent's letters or telephone calls designed to further discovery or to evade answering discovery in a straightforward and responsive way. Quite the contrary; all parties are equally obligated to participate fairly and cooperatively in discovery. *See* Rule 37, Federal Rules of Civil Procedure; *Harrington v. City of Chicago,* 433 F.3d 542 (7th Cir.2006); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,* 395 F.3d 416 (7th Cir.2005); *Johnson v. J.B. Hunt Transport, Inc.,* 280 F.3d 1125, 1132 (7th Cir.2002); *Newman v. Metropolitan Pier & Exposition Authority,* 962 F.2d 589 (7th Cir.1992); *Lorillard Tobacco v. Montrose Wholesale,* 2006 WL 2434031 (N.D.Ill.2006). The concept of trial by ambush has long ago fallen into desuetude in both state and federal courts. Modern discovery practices seek to facilitate (however haltingly and ineffectively) open and even-handed development of the relevant facts so that cases may be decided on their merits. Unfortunately, the conduct of the defendants continues to be unfaithful to these obligations. At the over two hour hearing on the motion to compel today, I expressed the view that I have shared with parties at various times over the past several months, namely that the defendants have utterly failed to comply with their discovery obligations. Rather, at almost every turn, they have attempted to frustrate discovery and to conceal critical information. The most dramatic example involves the claim that there were no accounting or equivalent records for the corporate defendant, N'Genuity, either in digital or paper form for an eight to nine year period, even though the company was bringing in many millions of dollars annually. I had expressed the view that the representation that there were no records was "inherently incredible," and no court is bound to accept inherently incredible evidence. *Cf.*

*Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985); *Geighy Chemical Corp. v. Allen*, 224 F.2d 110, 114, n.5 (5th Cir. 1955). Ultimately, my dubiety proved to have some foundation and following a court-ordered forensic examination of the defendants' computers, the untruth of the repeated representations that there were no accounting records was revealed. This is not an isolated instance but one of many examples of the intransigence that has marked discovery in this case.

The extent of the discovery noncompliance and obstruction has been so pervasive as to possibly amount to attempted spoliation. The doctrine of spolieto is one of the most enduring principles of common law. In essence, it provides that when a litigant, has destroyed, fabricated, or suppressed evidence, the trier of fact may draw an inference that the spoliator believes his case is weak or unfounded. The principle has best been described by Dean Wigmore:

> It has always been understood--the inference, indeed, is one of the simplest in human experience-- that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that this case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause. 2 Wigmore, Evidence §278 at 133 (3d Ed. 1940) (emphasis supplied). See also, Maguire & Vincent, Admissions Implied From Spoliation or Related Conduct, 45 Yale L.J. 226 (1935).

The fact that the attempts have not been fully successful is quite beside the point. The question is whether it is legitimate to draw a negative inference against the defendants either at trial or in connection with pending motions for a receiver, or for preliminary injunction. In my judgment, the answer is yes -- if the proof is there. At the hearing today, counsel for the defendants insisted that there has been no wrongdoing in discovery and if there have been lapses, they have been unintentional and made in good faith. I expressed the view that of the cases I have seen since becoming a judge, the conduct of the defendants in this case in discovery was the second worst that I had seen. The worst is Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc., 2007 WL 2580491, 4 (N.D.Ill. 2007);

Finally, a statement was made today at the hearing that accounting records that have never been seen by the plaintiff cannot be fraudulent since there could have been no reliance on them. I expressed disagreement with that contention. There are any number of reasons that make that assertion unpersuasive. At this stage, the representations that have been made to Mr. Jackson are unknown to me and so one cannot tell anything about them. But, the contention is to narrow. It is basic that "conduct which in usual situations the law protects may become unlawful when part of a scheme to reach a prohibited result." Miller v. Milwaukee, 272 U.S. 713, 715 (1927)(Holmes, J.). Cf. United States v. Cueto, 151 F.3d 620, 631 (7th Cir. 1998)("'Intent may make any otherwise innocent act criminal, if it is a step in a plot.'"). This is not meant, in any issue in the case or to indicate some ultimate opinion on the merits. I do not have sufficient proof before me to make such a judgment and, in any event, that is not my role in the case. I do, however, have sufficient first-hand, extensive involvement in the case to be able fairly to express again, as I have in the past, my grave concerns about the way in which the defendants have approached and dealt with their handling of discovery at every turn.