IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT E. JACKSON, an individual, | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GFI/GLOBAL FINANCIAL INVESTMENTS, LLC., an | ) | 09 cv 06010 |
| Arizona corporation | ) | Magistrate Judge |
| | ) | Jeffrey Cole |
|     Defendant. | ) | |

**PLAINTIFF'S MOTION FOR
PROVE UP OF DAMAGES AGAINST GLOBAL FINANCIAL INVESTMENTS**

Plaintiff, Vincent E. Jackson, by and through one of his attorneys, Kim Novi, and pursuant to Rule 55 of the Federal Rules of Civil Procedure asks this Court to conduct default judgment proceedings against Defendant Global Financial Investments ("GFI"). In support of this request, Plaintiff states as follows:

**PROCEDURAL HISTORY IN THE NORTHERN DISTRICT OF ILLINOIS**

1. On September 22, 2009, Plaintiff filed a Complaint against Defendants N'Genuity, Valerie Littlechief, Alfred Bowen and Dustin Bowen in DuPage County Court. Defendants removed the matter to federal court. [Dkt. #1]

2. On May 20, 2011, Plaintiff filed his First Amended Complaint [244] and added Littlechief Specialties, Impact Marketing Group ("IMG"), Global Financial ("GFI") and N'Genuity-Littlechief Enterprises as defendants.

3. With the consent of the parties, the Honorable Judge Lefkow referred the matter to this Court for discovery [Dkt. #60] and later expanded the referral to include proceedings on Plaintiff's motions for preliminary injunction and the appointment of a temporary receiver. [Dkt. #220]

4. On September 30, 2011, this Court ruled on Plaintiff's motions for preliminary injunction and the appointment of a temporary receiver [Dkt. #370] and issued a written memorandum opinion and order granting Plaintiff's motions. [Dkt. #362] On October 3, 2011, N'Genuity filed a motion requesting that the Court require Jackson to post a Preliminary Injunction Bond. [Dkt. #359] Therein, N'Genuity presented itself as a financially strong and successful company.

*N'Genuity files for Bankruptcy*

5. Just days later, on October 11, 2011, N'Genuity filed a Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court, District of Arizona. *In re N'Genuity,* 2:11 bk 28705. N'Genuity's Bankruptcy petition claimed assets of $3,730,379 and liabilities of $2,269,111. *In re N'Genuity,* 2:11 bk 28705, Dkt. #1. Of its liabilities, N'Genuity claimed to owe IMG (a company owned by Littlechief's step sons, Dustin and Chad Bowen and N'Genuity's largest creditor) $1,057,982.80. *Id*. N'Genuity's filing for bankruptcy triggered an automatic stay with respect to Mr. Jackson's claims against N'Genuity but not his claims against the remaining non-debtor Defendants.

6. On October 27, 2011, the Honorable Judge Lefkow ordered each of the defendants to appear or be held in default. [Dkt. #395] On November 29, 2011, only defendant Alfred Bowen appeared. Accordingly, counsel for Jackson made an oral motion for default judgment against Valerie Littlechief, Dustin Bowen, Littlechief Specialties, IMG and GFI. Judge Lefkow granted the motion and entered judgment by default on liability against all Defendants other than Alfred Bowen (and N'Genuity in light of the automatic stay) for their failure to

appear.[1] [Dkt. #404] Judge Lefkow also expanded the referral to this Court to conduct hearings and enter a Report and Recommendation on Plaintiff's prove-up of damages. [Dkt. #404]

7. On November 29, 2011, this Court ordered Plaintiff to produce any filings in support of damages no later than February 1, 2012. [Dkt. #405] Plaintiff timely complied with this order and filed his Motion for Entry of Default Judgment and Prove Up of Damages with a supporting memorandum of law [Dkt. #419] and his Proposed Findings of Fact and Conclusions of Law. [Dkt. #420]

8. In addition to filing his Motion for Entry of Default Judgment and Prove Up of Damages, Jackson also filed a Motion for Temporary Restraining Order with Judge Lefkow seeking to freeze the assets of Littlechief, Dustin Bowen, IMG and GFI. [Dkt. #416] Judge Lefkow set an emergency hearing for February 2, 2012. On the eve of the emergency hearing, Dustin Bowen, IMG and GFI each filed for bankruptcy in Arizona. [Dkt. #422] Judge Lefkow declined to enter an injunction freezing their assets but specifically noted that, "the timing of the other defendants' bankruptcy petitions gives rise to the inference that they were not filed in good faith." [Dkt. #422]

9. On February 8, 2012, this Court ordered the remaining defaulting defendants, Littlechief Specialties and Valerie Littlechief, to respond to Plaintiff's Prove Up of Damages [Dkt. #419] by February 22, 2012. [Dkt. #424] Rather than file a response with this Court, on February 21, 2012, Littlechief Specialties, Valerie Littlechief and Alfred Bowen filed for bankruptcy in Arizona. [Dkt. #427]

---

[1] On October 25, 2011, Jackson filed a Motion for Default Judgment as a sanction for the defendants' extensive discovery abuses. [Dkt. #389] In light of the automatic stay triggered by N'Genuity's bankruptcy filing, Jackson moved to withdraw this motion. [Dkt. #399] Judge Lefkow granted the motion to withdraw. [Dkt. #401]

3

10. On March 2, 2012, given that all the defendants had filed for bankruptcy, this Court closed the referral and returned the case to Judge Lefkow. [Dkt. #428]

**PROCEDURAL HISTORY IN THE BANKRUPTCY COURT FOR ARIZONA**

11. On October 28, 2011, Jackson filed a Motion to Dismiss N'Genuity's bankruptcy petition on the grounds that this remarkably profitable company filed for bankruptcy in bad faith as a litigation tactic to avoid the adverse rulings of this Court. *In re N'Genuity,* 2:11 bk 28705, Dkt. #27. The Bankruptcy Court for the District of Arizona, the Honorable George Nielsen presiding, denied Jackson's motion to dismiss, but ordered the appointment of a trustee. Judge Nielsen also adopted this Court's October 3, 2011 preliminary injunction ruling as the law of the bankruptcy case (with the exception of the appointment of a receiver). *In re N'Genuity,* Dkt. ##54, 58.

12. Jackson subsequently filed motions asking the Bankruptcy Court to dismiss each of the other bankruptcy petitions for having been filed in bad faith. In the alternative, Jackson asked the Bankruptcy Court to lift the automatic stay and permit this Court to liquidate the damages given this Court's knowledge of the case. *In re Bowen, IMG and GFI,* 2:12 bk 1855, Dkt. #27; *In re Littlechief,* 2:12 bk 03097, Dkt. #21. Each defendant objected including GFI. *In re GFI,* Dkt. ##61,100. The Bankruptcy Court denied Jackson's motions.

13. On May 31, 2012, the Chapter 7 Trustee in Littlechief Specialties' bankruptcy proceeding, *In re Littlechief Specialties Inc.,* 2:12 bk 03078, certified that the matter had been fully administered and the Bankruptcy Court ordered the case closed. *In re Littlechief Specialties Inc.*, Dkt. #31, 32.

14. Following the closing of Littlechief Specialties' bankruptcy proceeding, Jackson filed a Motion for Prove Up of Damages and a Memorandum in Support thereof. [Dkt. ##446,

454] On December 3, 2012, this Court issued its Report and Recommendation that final judgment should be entered in favor of Mr. Jackson and against Littlechief Specialties in the amount of $17,954,646, plus reasonable attorney's fees and costs as well as prejudgment and post judgment interest. [Dkt. ##459, 460] On January 17, 2013, Judge Lefkow entered final judgment in the amount recommended by this Court, $17,954,646, plus prejudgment interest in the amount of $70,657.68, post judgment interest of $88.54 per day, and attorneys' fees and expenses in the amount of $688,615.43. [Dkt. ##470, 471]

15. Prior to trial in the Arizona Bankruptcy Court on Jackson's proof of claims against N'Genuity, Jackson advised Judge Nielsen that Jackson's motion for prove up of damages against Littlechief Specialties was fully briefed and under consideration by this Court. Jackson filed a motion urging Judge Nielsen to reconsider and lift the automatic stay to permit this Court to adjudicate Jackson's proof of claim against N'Genuity. *In re N'Genuity,* 11 bk-28705, Dkt. #484. N'Genuity objected and Judge Nielsen denied Jackson's motion. Judge Lefkow entered final judgment entered against Littlechief Specialties during the course of the trial against N'Genuity. Jackson so advised Judge Nielsen. *In re N'Genuity,* Dkt. #484.

16. Prior to trial, Jackson also moved to bar Littlechief and Dustin Bowen from testifying inconsistently with their admissions of misconduct by virtue of the default judgments on liability entered against them by Judge Lefkow. *In re N'Genuity,* Dkt. #531. N'Genuity objected, in part, on the grounds that Judge Lefkow's order of default was nothing more than a "nebulous" docket entry. *In re N'Genuity,* Dkt. #535. Judge Nielsen denied Jackson's motions, thus nullifying the legal effect of the orders entered by the Northern District.

17. The trial commenced on October 31, 2012 and continued over the course of several days until April 25, 2013.

18. Jackson's theory of the case was straightforward and overwhelmingly supported by the evidence. Valerie Littlechief failed in her financial management of the company, and failed in her obligations to her fellow shareholder, when she unlawfully attempted to dilute Jackson's 49% interest to a less than 5% and, with her family, looted N'Genuity of millions unbeknownst to Jackson. Michael Pakter, Jackson's expert, placed those distributions at at least $12,064,045. Interestingly, Stacie Witten, N'Genuity's expert, admitted that N'Genuity had indeed disbursed millions to Littlechief and related entities and largely agreed with Pakter's figures (though she placed the figure at $11,258,977). (Ex. A, Dkt #527-2, p. 3 of 3.) N'Genuity defended payments to Dustin Bowen, Chad Bowen, Littlechief Specialties and IMG as a legitimate business expenses; payments to GFI as repayment of a loan (which failed to appear on N'Genuity's books); and payments to Valerie as compensation, loans, or as offsets to debts N'Genuity owed to GFI and IMG.[2] N'Genuity provided no explanation as to why IMG and GFI would permit N'Genuity to pay down its debt by paying for Littlechief's dry cleaning, architectural and interior design expenses, among others, particularly since Littlechief had no ownership or other interest in either company.

19. The parties submitted comprehensive (almost 200 pages) of post-trial briefing and argued the matter on May 10, 2013. Judge Nielsen rendered his judgment on October 28, 2013. In his decision Judge Nielsen concluded: "[t]his fact finder is absolutely convinced debtor through its insiders worked a significant harm and appreciable injustice on the minority shareholder by their actions and failure to act regarding financial management, record keeping, and undisclosed insider transactions." *In re N'Genuity,* Dkt #693, p. 101, attached hereto as Exhibit B. The Court was critical of the credibility of Littlechief, Dustin Bowen, Witten

---

[2] This theory contradicts N'Genuity's theory before this Court where it argued its payments for Littlechief's personal expenses constituted loans that were fully "reconciled" and paid by Littlechief.

(N'Genuity's accounting expert), and Richard De Alva (their outside accountant employed by Wayne Clouser, Ltd.). With respect to Littlechief, the Court noted:

> it is clear she [Littlechief] does not actually function as the president and chief executive officer of N'Genuity, other than in name. Contrary to her filed declaration, she is not " . . . thoroughly familiar with all aspects and operations of N'Genuity, including day-to-day operations, business affairs, books and records, and all rules and regulations . . ." applicable to this company. Her appalling failure to ensure that contemporaneous records were created to clarify and bring transparency to the dizzying mass of transfers of company cash to her, her personal creditors, family members and insider third parties largely created the crisis with the minority shareholder. During her watch, a mysterious loss of company records and documents occurred, contributing both to the alarm of the minority shareholder and to subsequent adverse rulings and sanctions from the Chicago District Court. Her lack of knowledge about the basic affairs of this relatively small, closely held company results in this court not being able to give credence to her assertions Mr. Jackson was fully informed as to events and that company books were always open to him.

(Ex. B, pp. 30-31.) With respect to Dustin Bowen, the Court concluded:

> Like the ostensible President and CEO, this witness also evidences a woeful lack of knowledge of the routine financial and accounting records and procedures of the company. Yet he is functionally the operations person. Whoever actually directs or is at least responsible for the financial affairs of the debtor was not called as a witness by any party. They should have been. Given Dustin's professed lack of knowledge of such information and extreme, although understandable family partisanship, this fact finder cannot grant him credibility in financial matters, including those of his own entities.

(Ex. B, p. 49.) With respect to Witten (the Debtor's accounting expert – who attempted to establish the legitimacy of the payments to Littlechief, Dustin, and their entities), the Court wrote:

> If either Dustin [Bowen] or Bud [sic] [Alfred Bowen] would tell Ms. Witten that an expense was a legitimate business expense, she would treat that information as if it had appeared appropriately in debtor's books and records. She followed this procedure even when the source of the information was Dustin and the transaction was with Dustin's personally owned entities. Even in a situation creating a conflict of interest for him, she still recognized Dustin as speaking for debtor. Likewise, even when the transaction involved debtor's payment of Ms. LittleChief's personal expenses, Ms. LittleChief was still treated as debtor's ultimate decision maker in the matter.

(Ex. B, pp. 90.) And with respect to Witten's testimony on the subject of the GFI loans, the Court concluded:

> None of the GFI transactions are recorded in debtor's books and records as a loan payable or as a reduction of a loan payable. Nor do GFI interest payments appear as business deductions in debtor's tax returns. When paying any money directly to Jackson as salary, for fees or for any other purpose, debtor would be obligated to also generate an IRS Form 1099.

7

> Ms. Witten believes that in 2003 debtor owed GFI $1,060,230. This amount includes the $466,210 reflected in the bookkeeper's "off balance sheet" memo.[3] She added this amount to the total debt owed to GFI based only on this memo, even though it does not list the additional one million dollars Ms. Witten believes was owed GFI for this period. With full respect to the witness, who is obviously attempting to assist a client, her report fails to mount a credible challenge to the principal factual conclusions of the Pakter report. Nor does her testimony assuage the court's concern regarding debtor's financial management or the credibility of its insiders.

(Ex. B, p. 94.)

20. With respect to Rick DeAlva of Wayne Clouser, Ltd., the court deemed Mr. DeAlva to be not credible and held that "[h]e did nothing to assuage the fact finder's concern that something is very wrong with the books, records, financials and management of N'Genuity." (Ex. B, p 85.)

21. Judge Nielsen specifically found that N'Genuity, unbeknownst to Mr. Jackson, paid for Littlechief's personal expenses and recorded thousands and thousands of dollars of personal expenses as business expenses – for example, characterizing Littlechief's expenses as "Costs of Goods Sold – chicken" and as "Professional Fees". (Ex. B, p. 9.) Also unbeknownst to Jackson, Judge Nielsen concluded, N'Genuity gave her unlimited interest free loans. (Ex. B. p.9) Contrary to N'Genuity's assertions, Judge Nielsen found no evidence that Littlechief repaid the loans or otherwise properly accounted for N'Genuity's payment of her personal expenses. (Ex. B p.8, fn4.) Judge Nielsen further concluded that N'Genuity paid its insiders and their entities "hundreds of thousands, if not millions of dollars" but was unable to produce basic documentation as to what they did or produce a single witness as to why they paid the insiders and their entities. (Ex. B., p. 99.)

---

[3] N'Genuity's accountant, Rick DeAlva of Wayne Clouser, CPA, testified that he knew that N'Genuity kept certain liabilities "off book" and admitted that "there is no legitimate use for off balance sheet transactions. They are essentially used to hide transactions." (Ex. B, pp. 81, 84.) Mr. Jackson has filed suit against Wayne Clouser Ltd., Wayne Clouser, and Rick DeAlva for professional negligence and related claims.

22. Judge Nielsen concluded that Littlechief and her family "engaged in conflicted transactions, failed to establish basic business accounting controls and meet basic standards for making and retaining accurate financial business records necessary for an appropriate understanding of debtor's financial transactions, all to the prejudice and injury of minority equity holder Jackson." (Ex. B., p. 98.) The court then ruled that Jackson did not sustain his burden of proof on his fraud claims. (Ex. B., p. 99.) Notably, however, *Jackson did not charge N'Genuity with fraud*.[4] Though the court found that Littlechief used N'Genuity funds as her own and did not repay them, it did not conduct an award calculation. Rather, it imposed "rough justice" and awarded Jackson $500,000 plus his attorneys fees and costs, and confirmed that Jackson remains a 49% shareholder of N'Genuity. (Ex. B., pp. 102 -104.) Subsequently, the court recommended that the parties participate in mediation to address the value of Mr. Jackson's 49% interest. That mediation is scheduled for February 5, 2014.

23. On November 7, 2013, Judge Nielsen closed N'Genuity's bankruptcy case. *In re N'Genuity,* Dkt. 700.

24. On November 26, 2013, Judge Nielsen granted GFI's motion to dismiss its bankruptcy petition. *In re GFI/ Global Financial Investments*, Dkt. 77 attached as Exhibit C.

25. On October 4, 2013, Judge Nielsen granted Alfred Bowen a discharge and closed his case. *In re Alfred Joseph Bowen,* 2:12-bk-02609, Dkt. 116.

26. Dustin Bowen and Valerie Littlechief's bankruptcy petitions, however, remain pending before Judge Nielsen. Jackson has filed non-dischargeability cases against both Bowen and Littlechief under Section 523 of the Bankruptcy Code which prohibits the discharge of a

---

[4] Jackson's First Amended Complaint served as the basis for his proof of claims against N'Genuity. Jackson's Complaint does not charge N'Genuity with fraud. Rather, Jackson charged N'Genuity's codefendants (Littlechief, Alfred Bowen, Dustin Bowen, Littlechief Specialties, IMG, GFI and N'Genuity-Littlechief Enterprises) with civil conspiracy and RICO violations. The trial concerned only N'Genuity and none of these codefendants.

debt for money obtained by fraud. The bases for Jackson's non-dischargeability actions are the same facts that gave rise to his claims in this Court.

27. Jackson has also filed a Complaint to Equitably Subordinate Littlechief's interests based on her fraudulent conduct. This matter also remains pending before Judge Nielsen.

28. IMG's bankruptcy proceeding also remains pending before Judge Nielsen. *In re IMG,* 2:12-bk-01856.

## THE AUTOMATIC STAY TRIGGERED BY GFI'S BANKRUPTCY PETITION HAS EXPIRED

29. On October 24, 2013, GFI filed a motion to dismiss its Chapter 11 bankruptcy proceeding. *In re GFI/ Global Financial Investments,* Dkt. #71. On November 26, 2013, Judge Nielsen granted GFI's motion and dismissed the case. *In re GFI/ Global Financial Investments,* Dkt. 77.

30. Section 362 of the Bankruptcy Code creates an automatic stay upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). However, the automatic stay expires when a case is dismissed. 11 U.S.C. § 362(c)(2)(B). Thus, the automatic stay with respect to GFI has terminated and Plaintiff seeks a prove up of damages.

31. This Court has the authority to conduct a prove up of damages proceeding. On January 27, 2014 Judge Lefkow granted Plaintiff's motion pursuant to Local Rule 72.1 to refer the matter to this Court to conduct proceedings and enter a Report and Recommendation on Plaintiff's prove-up of damages. [Dkt. #478]

WHEREFORE, Plaintiff respectfully requests that this Court conduct a prove up of damages proceeding and issue a report and recommendation on damages against GFI/Global Financial Investments and in favor of Jackson.

Respectfully submitted,
PLAINTIFF VINCENT E. JACKSON

By: _/s/ Kim Novi_
      One of His Attorneys

Kim Novi #6194228
**LAW OFFICES OF KIM NOVI**
22 W. Washington
Suite 1500
Chicago, IL 60602
312.750.9083
Kim.novi@att.net

Warren Stapleton #018646
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012
602.640.9000
wstapleton@omlaw.com